Mrs. Joan Francis LAW, Personal representative of the Estate of Wesley J. Law, Sr., etc., et al., Plaintiffs-Appellees,

v.

SEA DRILLING CORPORATION and Continental Oil Corporation, Defendants-Appellants.

Thomas J. LEBEOUF, Plaintiff-Appellee,

v.

SEA DRILLING CORPORATION, Defendant-Appellant.

No. 30657.

United States Court of Appeals, Fifth Circuit.

Nov. 7, 1975.

A. R. Christovich, Jr., New Orleans, La., for Sea Drilling.

Donald V. Organ, New Orleans, La., for Cont. Oil Corp.

Joy S. Miller, New Orleans, La., for Conoco.

Kenneth W. Manuel, John R. Martzell, New Orleans, La., for Law.

Philip E. Henderson, Robert L. Morris, Houma, La., for LeBeouf.

ON PETITIONS FOR REHEARING

(Opinion March 21, 1975, 5 Cir., 1975, 510 F.2d 242).

Before BROWN, Chief Judge, and GEWIN and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Defendant Sea Drilling Corporation (Seadrill) has made a substantial attack on our implicit holding that where death occurred due to injuries on the jurisdictional waters of the Death on the High Seas Act *Gaudet* and *Moragne* allow recovery for items historically not permit-

ted under the strictures of DOHSA's stringent pecuniary loss test.[1]

In passing on this reprise we take our text from The Sea Gull[2] from the pen of Judge Chase:

"[I]t better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules."

Convinced that those "established and inflexible rules" that would deny this recovery cannot stand in the face of *Moragne, Gaudet* or reason, we adhere.

More particularly, Seadrill's attack is directed to two items of recovery—conscious pain and suffering, item (7) in our original opinion[3] and loss of society, item (8). Their point seems to be that, since in the past neither has been recoverable under DOHSA standing alone, they should not be recoverable now. If DOHSA continued to hold sway as the exclusive remedy for death more than a marine league from shore Seadrill would be right but the High Seas are no longer DOHSA's Mare Nostrum.

Seadrill's fundamental objection to item (7) conscious pain and suffering in-

---

1. 46 U.S.C.A. § 762 provides:

The recovery in such suit shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought and shall be apportioned among them by the court in proportion to the loss they may severally have suffered by reason of the death of the person by whose representative the suit is brought.

2. C.C.D. Md.1865, 21 Fed.Cas. p. 909 (No. 12,-578) and quoted with approval in *Gaudet*, 414 U.S. at 583, 94 S.Ct. at 814, 39 L.Ed.2d at 20, 1973 A.M.C. at 2580.

3. For ease of reference we reproduce our original note 19.

19. The Court fixed and allocated damages as follows:

| | | COL. (A) Adjudged Against Both Conoco And Seadrill | COL. (B) Adjudged Against Conoco Only | COL. (C) Adjudged Against Seadrill Only |
|---|---|---|---|---|
| (1) Loss of wages to date of trial | 24,100.00 | | | |
| (2) Future loss of income | 159,398.00 | | | |
| (3) Cost of living increase | 41,665.00 | | | |
| Total | 225,163.00 | | | |
| (4) LESS 15% attributable to Mr. Law's use | 33,774.45 | | | |
| | | 191,388.55 | | |
| (5) Medical and burial expenses | | 851.77 | | |
| (6) Loss of love and affecttion | | | | |
| (a) Mrs. Joan Francis Law | | | 25,000.00 | |
| (b) Wesley J. Law, Jr. | | | 10,000.00 | |
| (c) Sandra K. Law | | | 10,000.00 | |
| (d) Larry J. Law | | | 10,000.00 | 55,000.00 |
| (7) Pain and suffering prior to death of Wesley J. Law, Sr. | | | 15,000.00 | |
| (8) Loss of nurture, guidance and control to children during minority: | | | | |
| (a) Wesley J. Law, Jr. | | | | 7,000.00 |
| (b) Sandra K. Law | | | | 8,000.00 |
| (c) Larry J. Law | | | | 9,000.00  24,000.00 |
| TOTAL | | $192,240.32 | $70,000.00 | $24,000.00 |

510 F.2d at 249 n. 19.

volves the distinction between survival recovery and recovery for wrongful death.[4] Traditionally, conscious pain and suffering has been allowed as an item of recovery only in a survival action as distinguished from an action for wrongful death. This is logical because a survival action compensates the decedent's estate for damages incurred by him personally while wrongful death recovery compensates the decedent's dependents and other survivors for the damages they incurred due to the death. Seadrill contends that because DOHSA, by its express terms, creates only a cause of action for wrongful death[5] and because DOHSA is the exclusive remedy for death on the High Seas, no recovery can be allowed for pain and suffering.

One answer to this contention is that proposed by the First Circuit Court of Appeals in *Barbe v. Drummond*, 1 Cir., 1974, 507 F.2d 794. The *Barbe* Court reasoned that the spirit of *Moragne* was to insure the uniformity of the maritime law by remedying "the non-existence of a federal cause of action and thereby avoid[ing] the problem of making plaintiff's recovery turn on the existence of a state survival statute . . .." *Id.* at 799–800. Therefore, "there is a federal maritime survival action, created by decisional law, for pain and suffering prior to death." *Id.* at 799. So far we agree.

But where our course diverges from that of the *Barbe* Court is that we *do not* hold, as did they, that "the measure of damages for wrongful death provided by DOHSA, namely 'pecuniary loss', controls" on the High Seas. This brings us to (7), loss of society.

■■ Loss of society is clearly a wrongful death item of recovery. The loss—and the damages—belongs to the dependents not to the decedent. And yet loss of society is not pecuniary. Therefore, this item has never been recoverable under DOHSA standing alone. Seadrill would have us hold that because DOHSA is the exclusive remedy for wrongful death on the High Seas no non-pecuniary wrongful death item can be recovered within its jurisdictional waters. The *Barbe* Court would allow conscious pain and suffering under the "federal maritime survival action, created by decisional law" but would deny loss of society for the same reason.

But we, our confidence bolstered by eminent authority,[6] read *Gaudet* less restrictively than the First Circuit or Seadrill. In upholding the grant of damages for loss of society the Court in *Gaudet* rejected the pecuniary loss test of DOHSA as inconsistent with "the humanitarian policy of the maritime law to show 'special solicitude' for those who are injured within its jurisdiction." 414

**4.** The intricacies of this distinction and its common law basis are well charted in Mr. Justice Brennan's opinion in *Gaudet.* 414 U.S. at 575 n. 2, 94 S.Ct. at 810, 39 L.Ed.2d at 15 n. 2, 1973 AMC at 2574 n. 2. And so we do not find it necessary to reiterate the arcane details except to say that there is a serious question in our minds whether these distinctions should have any weight under the beneficent Law Maritime.

**5.** 46 U.S.C.A. § 761 provides:

Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation

which would have been liable if death had not ensued.

But no bald statement characterizing DOHSA as a wrongful death statute can be made without at least some explanation. It is true that the statute, unlike, for instance, FELA, does not include a survival provision. But this lack was frequently circumvented. As ably stated by Gilmore and Black, "after some initial hesitation, the Courts concluded that DOHSA, in this situation, was not meant to be 'exclusive' and that, under the rule of *The Hamilton*, the DOHSA recovery for the dependents' pecuniary loss could be supplemented by a recovery for the decedent's pain and suffering before death under the survival provision of some conceivably relevant state statute' . . .." The Law of Admiralty 365 (2d ed., 1975). In addition, if the decedent was a crew member, survival items could be recovered under FELA § 59 incorporated in the Jones Act.

**6.** See note 7, *infra*.

U.S. at 588, 94 S.Ct. at 816, 39 L.Ed.2d at 23, 1973 AMC at 2584. Nowhere, does the Court indicate that the fact that Gaudet's injury occurred in territorial waters rather than the High Seas is critical. The dissenters—and it does not seem unfair to assume that they knew from what they were dissenting—clearly indicate their belief that the holding in *Gaudet* had abrogated the pecuniary loss standard of DOHSA. *Id.* at 605–07, 94 S.Ct. at 825–826, 39 L.Ed.2d at 32–34, 1973 AMC at 2597–99.

We are encouraged in our view by Gilmore & Black,

Thus *Gaudet,* if it is to be taken as representing the settled view of the majority of the Supreme Court, amply confirms our comment (written before *Gaudet* had been decided) that the *Moragne* case had "reduced both DOHSA and the FELA death provisions incorporated in the Jones Act to the level of nonstatutory Restatements." Under *Gaudet,* indeed, all the state statutes seem to have joined the federal statutes on the scrap heap. The maritime law death remedy, as explicated in *Gaudet,* is now more comprehensive and provides for a greater recovery than had previously been available under the federal death statutes or under most state death statutes.

The Law of Admiralty 369–70 (2d ed., 1975).[7] And

From Justice Harlan's discussion of the "anomalies" which the *Moragne* decision was designed to avoid, several conclusions clearly follow. The *Moragne* remedy covers deaths within territorial waters as well as deaths on the high seas. The remedy provides recovery for deaths caused by negligence as well as for deaths caused by unseaworthiness although in the latter case the decedent must have been a person (e. g., a Jones Act seaman) entitled to the warranty of seaworthiness. As to deaths within state territorial waters, the question whether a state wrongful death statute affords recovery for unseaworthiness is no longer relevant since the remedy is provided by maritime law.

*Id.* at 368.

That the *Moragne* remedy has replaced—or at least augmented—DOHSA seems even more correct to us when the alternative is examined. The *Barbe* position that the DOHSA standard still carries the day on the High Seas adds another anomaly to the three that Mr. Justice Harlan hoped to lay to rest in *Moragne.*[8] Simply stated, this fourth anomaly is that under the *Barbe* holding a claimant under substantive maritime

---

**7.** The authors go on to point out that the *Gaudet* majority is a precarious one. We do not feel that this is a proper consideration for us in arriving at our decision.

**8.** The first of these is simply the discrepancy produced whenever the rule of The Harrisburg holds sway: within territorial waters, identical conduct violating federal law (here the furnishing of an unseaworthy vessel) produces liability if the victim is merely injured, but frequently not if he is killed. As we have concluded, such a distinction is not compatible with the general policies of federal maritime law.

The second incongruity is that identical breaches of the duty to provide a seaworthy ship, resulting in death, produce liability outside the three-mile limit—since a claim under the Death on the High Seas Act may be founded on unseaworthiness, see *Kernan v. American Dredging Co.,* 355 U.S. 426, 430 n.

4, 78 S.Ct. 394, 2 L.Ed.2d 382, [387] 397, (1958)—but not within the territorial waters of a State whose local statute excludes unseaworthiness claims. The United States argues that since the substantive duty is federal, and federal maritime jurisdiction covers navigable waters within and without the three-mile limit, no rational policy supports this distinction in the availability of a remedy.

The third, and assertedly the "strangest" anomaly is that a true seaman—that is, a member of a ship's company, covered by the Jones Act—is provided no remedy for death caused by unseaworthiness within territorial waters, while a longshoreman, to whom the duty of seaworthiness was extended only because he performs work traditionally done by seamen, does have such a remedy when allowed by a state statute. 398 U.S. at 395–96, 90 S.Ct. at 1784, 26 L.Ed.2d at 353–54, 1970 A.M.C. at 983–84.

law who brought suit at law (either the law side of the federal district court or the state court) under the Savings to Suitors Clause would be entitled to the full panoply of recovery under *Moragne* while those unfortunates who could not meet the requisites of diversity jurisdiction[9] or get personal jurisdiction in either the state or federal court,[10] would be restricted to the DOHSA pecuniary loss. This is because as Mr. Justice Harlan suggested in *Moragne*,[11] the widely assumed exclusively of DOHSA does not mean that it is the only remedy. What it does mean is that DOHSA suits must be brought in admiralty—"a suit for damages in the district courts of the United States, in admiralty * * *." 46 U.S.C.A. § 761.

As Justice Harlan put it, "no intention appears that the Act have the effect of foreclosing any nonstatutory federal remedies that might be found appropriate to effectuate the policies of general maritime law." 398 U.S. at 400, 90 S.Ct. at 1787, 26 L.Ed.2d at 356, 1970 AMC at 986.

Where this leaves us is that the alternative to our holding is to impose an unwieldy trifid system on recovery for maritime deaths. [i] If the death occurred within territorial waters, recovery could be had under the *Moragne* wrongful death-survival action. [ii] If the death occurred on the High Seas and the unwary pleader invoked the magical provisions of F.R.Civ.P. 9(h), or in the unlikely event that he could not obtain jurisdiction in any state court, full survival recovery could be had under the decisional law-created federal maritime survival action but wrongful death recovery would be limited to DOHSA's "pecuniary loss." And [iii] the legal helmsman with a closer eye on the telltale—for the same death on the High Seas—could file his

**9.** In the present case, although the trial was to the Court alone, the complaint was scrupulously drawn in terms of diversity jurisdiction and made no reference impliedly or otherwise to F.R.Civ.P. 9(h). For this reason if no other, the DOHSA standard can be no bar to complete recovery. See note 8, *supra*.

**10.** Of course under the 1963 amendments to F.R.Civ.P. 4 personal jurisdiction can be obtained by "service upon or notice to him to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of his property located within the state" if the state in which the District Court sits so allows. F.R.Civ.P. 4(e). This means that if no other method of obtaining personal jurisdiction was available an attachment of the vessel could almost always be the basis of an action quasi in rem.

**11.** Justice Harlan pointed out that the only implication that DOHSA was meant to be the exclusive remedy for death on the High Seas was the erroneous opinion of Representative Volstead, the architect of legislation bearing his name under the Eighteenth Amendment.

We note that § 1 of the Act, which authorizes "a suit for damages in the district courts of the United States, in admiralty," has been construed to place exclusive jurisdiction on the admiralty side of the federal courts for suits under the Act, e. g., *Devlin v. Flying Tiger Lines, Inc.,* 220 F.Supp. 924 (D.C.S.D.N.Y.1963), although there was earlier authority to the contrary. *Bugden v. Trawler Cambridge,* 319 Mass. 315, 65 N.E.2d 533 (1946). If we found from the

legislative history that Congress imposed exclusive jurisdiction because of a desire to avoid the presentation of wrongful-death claims to juries, that might support an inference that Congress meant to forbid nonstatutory maritime actions for wrongful death, which might come before state or federal juries. Cf. *Fitzgerald v. United States Lines,* 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). However, that is not the case. The only discussion of exclusive jurisdiction in the legislative history is found in the House floor debates, during the course of which Representative Volstead, floor manager of the bill and chairman of the Judiciary Committee, told the members that exclusive jurisdiction would follow necessarily from the fact that the Act would be part of the federal maritime law. 59 Cong.Rec. 4485. This erroneous view disregards the "saving clause" in 28 U.S.C. § 1333, and the fact that federal maritime law is applicable to suits brought in state courts under the permission of that clause. See n. 1, supra. When asked whether it was true that jury trials would never be available in suits under the Act, Representative Volstead replied: "I do not think so. Perhaps, for certain purposes, under the practice that prevails, they may have a jury, but ordinarily a jury is not allowed. However, I do not know much about admiralty practice." 59 Cong.Rec. 4485. From this we can derive no expression of policy bearing on the matter under discussion.

398 U.S. at 356 n. 14, 90 S.Ct. 1787, 26 L.Ed.2d at 356 n. 14, 1970 A.M.C. at 986 n. 14.

action at law and under substantive maritime principles would recover all that *Moragne* and *Gaudet* allow.

This is not uniformity. It is its lack. And we cannot accept it. It is time that the dead hand of *The Harrisburg* —whether in the courts or on the elbow of the congressional draftsmen of DO-HSA—follow the rest of the hulk to an honorable rest in the briney deep.

█ No longer does one need a state remedy. No longer does one need a state court, or The Admiralty as a Court, or DOHSA as a remedy. There is a federal maritime cause of action for death on navigable waters—any navigable waters—and it can be enforced in any court.

Seadrill's petition for rehearing is denied. The petition for rehearing of Seadrill's co-defendant, Continental Oil, and of Mrs. Law, the plaintiff, are also denied for the reasons stated in our original opinion.

No member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.