Michael J. **CANTORE, Jr.,** as Personal Representative of the Estate of Nobutaka Morizane, deceased, Plaintiff,

v.

**BLUE LAGOON WATER SPORTS, INC.,** a Florida Corporation, for profit; Mirage International, Inc., a Florida Corporation for profit, d/b/a Blue Lagoon Motel; and Nightown, Inc., a Florida corporation for profit, Defendants.

No. 91–10014–CIV.

United States District Court, S.D. Florida.

Sept. 9, 1992.

Joel D. Fogel, Miami, Fla., for plaintiff.

Stephen J. Riley, Fort Lauderdale, Fla., Harriet Lewis, Hollywood, Fla., for defendants.

ORDER GRANTING IN PART AND DE-
NYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDG-
MENT, AND GRANTING IN PART
AND DENYING IN PART PLAIN-
TIFF'S CROSS–MOTION FOR PAR-
TIAL SUMMARY JUDGMENT

JAMES LAWRENCE KING, District
Judge.

This cause comes before the Court upon
Defendant Blue Lagoon Water Sports'
("Blue Lagoon") Motion for Summary
Judgment, which was adopted by Co–De-
fendant Mirage International Inc., d/b/a/
Blue Lagoon Motel, and upon Plaintiff Can-
tore's Cross–Motion for Partial Summary
Judgment.

## I. BACKGROUND AND PROCEDURAL HISTORY

This is an action brought by Cantore as
personal representative of the estate of
decedent who was killed when a jet ski
rented by Blue Lagoon Water Sports collid-
ed with decedent's jet ski. Defendant Blue
Lagoon Water Sports ("Blue Lagoon") op-
erated its rental facility in Key West, Flori-
da, at a complex located on the premises of
Blue Lagoon Motel. Blue Lagoon Motel,
by virtue of its operation of the docking
facility, ownership of the premises, its ad-
vertising, its customer referral service, and
shared profits and losses, exercised a right
of control over Blue Lagoon Water Sports.
*See* Order Granting Motion to Dismiss,
6/27/91.

Defendant Blue Lagoon's Motion for
Summary Judgment, filed on April 14,
1992, was adopted by Co–Defendant Blue
Lagoon Motel on April 24, 1992. On April
30, 1992, Plaintiff responded to Defen-
dants' Motion for Summary Judgment and
filed a Cross–Motion for Partial Summary
Judgment. The issues of law before the
Court concern the measure of damages
Plaintiff is entitled to recover in this
wrongful death action.

■ For the following reasons, this
Court holds that Plaintiff will be entitled to
recover on behalf of decedent's parents for
loss of society only if actual financial de-
pendency on the decedent is proven, and
for loss of services only if actual pecuniary
damages are proven for loss of valuable
services. Plaintiff is foreclosed from re-
covering on behalf of the estate for future
economic loss. In addition, this Court
holds that Plaintiff is entitled to recover on
behalf of the parents for medical and fu-
neral expenses, and on behalf of the Estate
for pain and suffering before death. Each
measure of damages will be discussed sep-
arately.

## II. ANALYSIS

There are three primary areas of law
covering wrongful death in admiralty
cases: The Jones Act, 46 U.S.C.A.App.
§ 688; the Death on the High Seas Act
("DOHSA"), 46 U.S.C.A.App. §§ 761–768;
and general maritime law. The Jones Act
applies only to true seaman and therefore
is not controlling in this case. *Miles v.
Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct.
317, 321, 112 L.Ed.2d 275 (1990). DOHSA
applies only to deaths occurring on the
high seas. *Id.*, 111 S.Ct. at 321. The death
in this case occurred in territorial waters
and thus is not controlled by DOHSA.
However, as both the Jones Act and DOH-
SA were enacted to further uniformity in
the exercise of maritime tort law, *Miles*,
111 S.Ct. at 328, both statutes and the
cases that have interpreted them are illus-
trative of the damages to be awarded in a
wrongful death action under general mari-
time law.[1]

### A. Loss of Society

As noted in this Court's Order of Decem-
ber 31, 1991, there exists a split of authori-
ty on whether nondependent survivors may
recover for loss of society. The current
trend is to deny such recovery to nondepen-
dent survivors. *See Miles*, 498 U.S. 19, 111

---

**1.** The Supreme Court in *Moragne v. States Ma-
rine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26
L.Ed.2d 339 (1970), overruled prior case law
and created a general maritime wrongful death

cause of action. For a detailed discussion of
*Moragne* and its history, *see Miles,* 498 U.S. at
——, 111 S.Ct. at 320–323.

S.Ct. 317 (under Jones Act); *Sistrunk v. Circle Bar Drilling Co.,* 770 F.2d 455 (5th Cir.1985) (under Jones Act and DOHSA); *Neal v. Barisich, Inc.,* 707 F.Supp. 862 (E.D.La.1989), aff'd without opinion, 889 F.2d 273 (5th Cir.1989) (under Jones Act); *Anderson v. Whittaker Corp.,* 692 F.Supp. 764 (W.D.Mich.1988), aff'd in part and rev'd in part, 894 F.2d 804 (6th Cir.1990); *Truehart v. Blandon,* 672 F.Supp. 929 (E.D.La. 1987); *Randall v. Chevron, U.S.A.,* Vol. 70 Am.Mar. Cases 1583, 1992 WL 10431 and 1992 WL 25707 (E.D.La.1992); *Lipworth v. Kawasaki Motors Corp.,* 592 So.2d 1151 (Fla. 4th DCA 1992); *Perlman v. Valdes,* 575 So.2d 216 (Fla. 3d DCA 1990). *See also In re P & E Boat Rentals, Inc.,* 872 F.2d 642 (5th Cir.1989) (allowing recovery but emphasizing fact that mother was dependent on decedent); *In re Complaint of Patton–Tully Transp. Co.,* 797 F.2d 206 (5th Cir.1986) (allowing recovery but emphasizing dependency of survivors); *Toups v. Du–Mar Marine Contractors, Inc.,* 644 F.Supp. 475 (E.D.La.1986) (extending *Sistrunk* to deny recovery under general maritime law for loss of society to nondependent parents where their seaman son, who was nonfatally injured, had no wife or child).

The Supreme Court has not ruled on this precise issue. However, the Court in *Miles,* 498 U.S. 19, 111 S.Ct. 317, set forth principles which are helpful in determining this case. In *Miles,* the nondependent parent of a seaman brought a wrongful death action. The Court concluded "that there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman." *Miles,* at ——, 111 S.Ct. at 326. *Miles* is persuasive, but not controlling, as the instant case does not involve the death of a true seaman. Accordingly, the question whether the survivors of a decedent who does not fall within the ambit of either DOHSA or the Jones Act could recover is still undecided. In a case such as *Miles,* the Court is restricted in its award of damages by the Congressional intent expressed in the statutes. Allowing recovery beyond what is permitted in the statutes would be to expand recovery beyond what Congress intended. How-

ever, the instant case is distinguishable in that the Plaintiff could not have had recovery under either the Jones Act or DOHSA. Thus, it could be argued, the Plaintiff should not be limited to only those damages allowed in the statutes. Nonetheless, as explained in *Truehart,* 672 F.Supp. 929, "distinguishing other cases on the basis of their involving seamen and seaworthiness claims in order to allow recovery here would not foster admiralty's aim at providing special solicitude to seamen. General maritime law is its most generous to seamen, the wards of admiralty." *Id.* at 937. Moreover, *Miles* evinces the Supreme Court's intent to limit recovery of nonpecuniary losses by nondependent survivors, thereby furthering uniformity in the law. The Court emphasized that it acted "in accordance with the uniform plan of maritime tort law Congress created in DOHSA and the Jones Act." *Id.* 498 U.S. at ——, 111 S.Ct. at 328. *See also Anderson,* 894 F.2d 804, 811 (citing the "twin aims" of maritime law—those of achieving uniformity in the exercise of admiralty jurisdiction and of providing special solicitude to seamen—to deny recovery to nondependent parents); *Perlman,* 575 So.2d 216 (applying *Miles* to nonseaman in denying recovery to parents absent a showing of financial dependence on the decedent); *Texaco Refining and Marketing, Inc. v. Estate of Dau Van Tran,* 808 S.W.2d 61 (Tex.1991) (applying *Miles* to nonseaman).

Uniformity in maritime tort law was emphasized and explained in *Truehart,* a case involving a maritime wrongful death action brought by the parents of a young man killed due to the negligent operation of a pleasure boat. The *Truehart* analysis is most apposite here. In denying recovery to the nondependent parents, the court explained:

> [D]enying recovery lends more uniformity to admiralty jurisdiction than allowing recovery, for the [plaintiffs] could not have recovered under the other maritime remedies. DOHSA limits recovery to pecuniary loss, 46 U.S.C. § 762; *Sistrunk,* 770 F.2d at 459, while the Jones

Act precludes recovery for loss of society from wrongful death of a seaman in a Jones Act or general maritime negligence action against his employer.

[Moreover], denying recovery follows the decided wisdom that only dependents should be permitted to recover for loss of society.

672 F.Supp. at 937. The *Truehart* analysis exemplifies the current trend in defining Plaintiff's entitlement to loss of society damages in a maritime wrongful death action and has been followed by several courts. *Neal*, 707 F.Supp. 862; *Anderson*, 692 F.Supp. 764; *Lipworth*, 592 So.2d 1151; *Randall*, Vol. 70 Am.Mar. Cases 1583.

Dependency was the determining factor in an earlier case, *Sistrunk*, 770 F.2d 455, where parents of seamen who were killed in territorial waters joined in wrongful death actions seeking nonpecuniary damages for loss of society. The court there held that "nondependent parents may not recover for loss of society where their deceased children were killed in territorial waters and are survived by spouse and/or child." *Id.* at 461. As the court in *Truehart* stated, when reading *Sistrunk* in light of *Patton–Tully*, "the holding in *Sistrunk* depends not on whether a decedent has a surviving spouse or child, but on whether the plaintiff was dependent on the decedent." *Truehart*, 672 F.Supp. at 935. However, *Truehart* raised without deciding the question whether a parent who was not financially dependent on the deceased relative but who did live with that relative could seek loss-of-society damages under *Moragne*. The question was subsequently resolved in *Neal*, 707 F.Supp. 862, where the same court held that such parents could not recover.

The fact that the decedent in this case was a 24 year-old college student who was still part of his parents' household at the time his death occurred is not sufficient to establish dependency of the parents on decedent. *Neal*, which relied on *Truehart*, involved an action by parents of a seaman who drowned when he was thrown overboard after two vessels collided. The loss of society claims of both parents were dismissed because neither parent was dependent on the decedent son. Significantly, even though the father and son were living together at the time of the decedent's death, the court held that the controlling case law used the term "dependency" to mean only *financial* dependency. 707 F.Supp. at 873.[2] *See also Randall*, Vol. 70 Am.Mar. Cases 1583 (deciding the matter on the basis of actual financial dependency, but suggesting in dicta a presumption of dependency where the deceased was living with a relative, especially a parent or child).

In *Anderson*, 692 F.Supp. 764, the court determined that dependency of survivors upon decedent was a bright line test for recovery, holding:

[I]t is inherent in the nature of wrongful death remedies that not every survivor is entitled to recover monetary damages. A line must be drawn; without the express terms of a statute to guide the Court, it must draw a boundary that is most in line with the purpose underlying creation of the remedy. This Court is in agreement with *Truehart* in concluding that a limit based upon dependence is in line with the philosophy of *Moragne* and subsequent cases.

*Id.* at 772.

Further, recent Florida decisions construing general maritime law to deny recovery for loss of society to nondependent parents are in accord with the current *Truehart* movement in the law. In *Lipworth*, 592 So.2d 1151, a products liability action against a jet ski manufacturer, the court held "that parents may not recover under general maritime law for the death of a child absent a showing of financial dependence on the child." *Id.* at 1158 (citing *Perlman*, 575 So.2d 216).

2. The court was referring to *Moragne* and subsequent cases interpreting the Jones Act and DOHSA. *See Sea–Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974) (allowing widow of longshoreman to recover damages for loss of society); *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) (holding that the survivors of a decedent who is killed on the high seas may not recover, in addition to the damages authorized by DOHSA, damages for loss of society under general maritime law).

Plaintiff's argument relies on *Sea–Land Services v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), *Law v. Sea Drilling Corp.*, 523 F.2d 793 (5th Cir.1975), and *Palmer v. Ribax, Inc.*, 407 F.Supp. 974 (M.D.Fla.1976). However, these cases are neither controlling nor persuasive.

In *Miles*, the Supreme Court limited *Gaudet* to its narrow facts: "The holding of *Gaudet* applies only in territorial waters, and it applies only to longshoremen." 498 U.S. at ——, 111 S.Ct. at 325. This language evinces the Supreme Court's intent to limit *Gaudet* while expanding the *Miles* analysis. Plaintiff's second case, *Law*, is factually distinguishable from the present case in that the plaintiff in *Law* was a surviving widow. As *Truehart* makes clear, "the law generally finds it unnecessary to ask whether one spouse depends on money from the other in order to bestow the legal benefits of marriage." 672 F.Supp. at 937. Such dependency is presumed.[3]

Finally, Plaintiff relies on *Palmer*, 407 F.Supp. 974, a Middle District of Florida case awarding recovery to nondependent parents for loss of society caused by the drowning death of their child. However, *Palmer* is by now an anomaly. The case has become a minority view, and is entirely in conflict with the movement in this area of law that has occurred over the last several years. In furtherance of the goal of uniformity in maritime tort law, this Court rejects the rationale of *Palmer*.

As the foregoing case law demonstrates, general maritime law has moved toward a denial of recovery for loss of society where the survivors are not dependent on the decedent. This Court finds the *Truehart* analysis compelling and will follow it here. Therefore, Plaintiff will not be entitled to recover on behalf of decedent's parents damages for loss of society unless actual financial dependency is proven. Actual dependency remains a genuine issue of material fact for trial. Therefore, Defendants' Motion for Summary Judgment on this issue will be denied.

**B. Loss of Services**

■ Plaintiff seeks to recover damages for loss of services and bases that claim on "[d]ependency in the nature of the family relationship ... [with] the only matter remaining for ultimate determination [being] the frequency and nature of the 'services' performed by the decedent." Pl's Resp. at 8. However, as noted in *Neal*, 707 F.Supp. at 869,[4] "monetary (or pecuniary) loss is of course the touchstone for this element of damages." Thus, Plaintiff must prove actual pecuniary damages for loss of valuable services in order to recover. The loss of services measure of damages remains an issue of fact for trial.

**C. Future Economic Loss**

■ In *Miles*, the Supreme Court refused to allow recovery of lost future earnings, stating that "the considered judgment of a large majority of American legislatures is that lost future income is not recoverable in a survival action. Were we to recognize a right to such recovery under maritime law, we would be adopting a distinctly minority view." 498 U.S. at ——, 111 S.Ct. at 327. Following the reasoning of *Miles*, this Court will grant Defendants' Motion for Summary Judgment on the issue of damages for future economic loss. *See also Anderson*, 692 F.Supp. at 769 (relying on *Gaudet*, 414 U.S. at 584–585, 94 S.Ct. at 814–15, to limit recovery for loss of support to decedent's dependent survivors.)

---

**3.** Moreover, as the Fifth Circuit affirmed *Neal*, 889 F.2d 273 (denying recovery to nondependent survivors), after *Law* was decided (allowing recovery to "survivors" where survivor was decedent's widow), it is evident that this factual distinction is both relevant and determinative of the issue.

**4.** In *Neal*, each parent's claim for damages for loss of services was dismissed. The decedent's mother could not show that her son had per-

formed any services for her within two years prior to his death and the court determined it was mere conjecture "to presume that the decedent, had he lived, might have decided to start performing other services for her in the future." 707 F.Supp. at 869. Additionally, although the father did prove loss of service, he was foreclosed from recovery because he could not prove he had suffered "*monetary loss* for any such future work the decedent might have done." *Id.* at 869 (emphasis added).

### D. Medical and Funeral Expenses

■ Medical and funeral expenses are recoverable under general maritime law. *See Neal,* 707 F.Supp. at 869, n. 14 (holding that such expenses were recoverable "although it appears unclear ... whether they are recoverable as survival damages to a decedent's estate or instead as wrongful death damages to his survivors."); *Truehart v. Blandon,* 685 F.Supp. 956, 958 (E.D.La.1988) (holding that funeral expenses were recoverable to the decedent's personal representative under general maritime law, where the decedent's survivors were nondependent on the decedent). Accordingly, this Court grants Plaintiff's Cross–Motion for Summary Judgment on the issue of whether such damages are recoverable. Plaintiff need only prove the extent of these compensable damages at trial.

### E. Pain and Suffering Before Death

■ Finally, damages for decedent's pain and suffering before death are recoverable in a maritime wrongful death action by the estate. *See Miles v. Melrose,* 882 F.2d 976 (5th Cir.1989) (affirming a jury award of damages for decedent's pain and suffering); *Self v. Great Lakes Dredge & Dock Co.,* 832 F.2d 1540 (11th Cir.1987) (holding such damages were appropriate); *Hlodan v. Ohio Barge Line, Inc.,* 611 F.2d 71, 76 (5th Cir.1980) (holding that where death was not "instantaneous" and "the evidence showed that for some undetermined number of minutes before his death [decedent] was aware of his predicament," damages award for conscious pain and suffering was proper); *Dickerson v. Continental Oil Company,* 449 F.2d 1209 (5th Cir.1971) (allowing recovery for pain and suffering of a drowning victim); *Anderson,* 692 F.Supp. at 773 (holding that claims for "decedents' pain and suffering prior to their deaths ... [are] recoverable under the general maritime law"). Accordingly, Plaintiff's Cross–Motion for Summary Judgment will be granted as damages for pain and suffering are recoverable. It will remain for Plaintiff to adduce at trial evidence of the measure of such damages.

In sum, Plaintiff will be entitled to recover for loss of society only if actual financial dependency on the decedent is proven at trial. Plaintiff will be entitled to recover for loss of services only if actual pecuniary damage for loss of valuable services is proven at trial. Plaintiff is foreclosed from recovering for future economic loss. Plaintiff is entitled to recover for actual medical and funeral expenses, and for decedent's pain and suffering before death. The amount of these damages must be proven at trial.

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendant's Motion for Summary Judgment be, and the same is hereby, GRANTED in part and DENIED in part. It is further ORDERED AND ADJUDGED that Plaintiff's Cross–Motion for Summary Judgment be, and the same is hereby, GRANTED in part and DENIED in part. Consistent with this opinion, a genuine issue of material fact remains as to damages for loss of society and loss of services. Plaintiff may recover for medical and funeral expenses and for pain and suffering before death as a matter of law. Plaintiff may not recover for future economic loss as a matter of law.

DONE AND ORDERED.